UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TINA HARRIS, as next friend of
L.H., a minior,

        Plaintiff,

v.

CITY OF CADILLAC and
KAREN GREGG,

        Defendants.
_____/

Case No. 5:05-CV-158

Hon. Richard Alan Enslen

**OPINION**

      Defendants City of Cadillac and Karen Gregg have moved for summary judgment as to Plaintiff Tina Harris' federal section 1983 claims and related state-law claims. Plaintiff has opposed the Motion for Summary Judgment. Oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d).

      Under Federal Rule of Civil Procedure 56, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In assessing the evidence of record, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Upon the assessment of the current record, it is clear that summary judgment must be denied since strong record evidence supports each of Plaintiff's federal and state law claims. The record, interpreted in a light most favorable to Plaintiff, indicates the following: On November 1, 2004, L.H. was a fourteen-year-old female student enrolled at the Cadillac Junior High School.[1]  She had been disciplined prior to that day for a verbal argument with another student.  The discipline imposed by the school was a requirement that she eat lunch in the School office rather than in the cafeteria.  However, on November 1, 2004, she observed the other student who was disciplined due to the argument in the cafeteria and believed that she was free to return to the cafeteria.  The School Principal, after observing L.H. in the cafeteria, called the City of Cadillac Police Department, which dispatched Karen Gregg, an assigned Youth Services Officer. Officer Gregg approached L.H. with pepper spray already in hand.  At that time, L.H. was compliant with Gregg's demands.  Nevertheless, Gregg pepper sprayed L.H. in the face and pushed L.H. into a wall.  L.H. then fell forward to the floor writhing in pain.  Gregg grabbed L.H. by her clothing and her hair to pull her to her feet and then dragged her to a ladies' washroom where Gregg verbally abused L.H.  Afterwards, L.H. was charged with the felony of resisting arrest and obstructing a police officer in Probate Court and was acquitted of those charges.

Furthermore, the record shows the following evidence concerning Defendant City of Cadillac's supervision of Gregg and the City's failure to appropriately supervise or control lawless conduct by Gregg:  Gregg was suspended by the City of Cadillac at least four times between 1984

---

[1] There is very significant support for the minor's claims, including not only her own testimony, but also an overhead video showing the incident and the testimony of some eight independent witnesses (students) who supported L.H.'s own testimony. (*See* Pl.'s Br. 6-12, citing pertinent testimony.)

and November 1, 2004. (Pl.'s Br., Ex. 18.) The first incident was in 1984 for careless discharge of a firearm; she shot a computer monitor at the police station and was also disciplined for failing to stop her vehicle for a stopped school bus with flashing lights. (Pl.'s Br., Ex. 15.) The incident resulted in her termination, though she was later reinstated. The second incident came in 1992 when she was suspended for failing to obey a direct order. (*Id.*)

In July 1993, Defendant Gregg added information to a police report prepared by Officer Kathy Bohannon, without Bohannon's knowledge or approval. (*Id.*) This was disclosed after a probate hearing involving the document and Gregg's son. Gregg's ex-husband then reported the matter to the City Manager and the subsequent investigation found that Gregg had committed a serious violation of policy warranting her suspension. (*Id.*) The Chief of Public Safety then warned Gregg that she would be terminated for any future violations of policy. (*Id.*) In June 1994, Defendant sent a letter to the City Manager asking that the 1992 incident be expunged from her personnel record on the premise that she had been misconduct-free since then. (*Id.*) The request was denied by the City Manager due to the false premise. No action was taken against Gregg even though she had submitted a false statement to the City Manager.

In 1997, Officer Wohlfeill was dispatched to Defendant Gregg's home regarding threatening telephone messages that Gregg's son had left on Gregg's answering machine. Officer Wohlfeill took the tape as possible evidence of criminal conduct. (Pl.'s Br., Ex. 15 & Ex. 14 at 12-16.) Gregg subsequently obtained the tape from Officer Wohlfeill for supposed temporary use, but then failed to return the tape and even initially refused her superior's demands to return the tape. (*Id.*) She was then suspended for tampering with evidence, but was not fired.

Such evidence is sufficient to support an inference that the City of Cadillac had a *de facto* policy of failing to supervise Gregg and of allowing Gregg to continually engage in illegal conduct and then ratifying the misconduct. This inference is further supported, as to the instant incident, by the fact that Tina Harris, promptly after the pepper-spraying incident, attempted to file a complaint with the City of Cadillac regarding Gregg's conduct and the police office refused to take her complaint and did not refer the complaint to the Michigan State Police for investigation. (*See* Pl.'s Exs. 16 & 17.)

The record, so interpreted, supports liability against Gregg for violation of the Fourth Amendment in that she did not have a reasonable suspicion within the meaning of *Terry v. Ohio*, 392 U.S. 1 (1968) to stop L.H. for unlawful conduct, nor probable cause to arrest her within the meaning of such cases as *Dunaway v. New York*, 442 U.S. 200, 212 (1979) and *Kaupp v. Texas*, 538 U.S. 626, 631 (2003).

The record so interpreted supports liability against Gregg for violation of the Fourth Amendment due to Gregg's use of excessive force in pepper spraying L.H., forcing L.H.'s head into a wall, dragging L.H. by her hair and otherwise treating her roughly, especially given the subject's age and compliance with Gregg's demands, and given Gregg's lack of significant attempts to resolve the interaction without prompt use of physical force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir. 2001) (disapproving use of rough handcuffing as to nonviolent arrestee); *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006) (disapproving use of force as to non-resisting arrestee and citing with approval *Headwaters Forest Defense v. County of Humboldt,* 276 F.3d 1125, 1131 (9th Cir. 2002), which held that officers were not entitled to qualified immunity for spraying nonviolent protesters with pepper spray)); *Adams v.*

*Metiva,* 31 F.3d 375, 384 (6th Cir. 1994) (holding that the use of pepper spray as to unarmed plaintiff who was not resisting arrest was excessive force as a matter of law).

Qualified immunity does not protect Gregg from liability concerning these incidents because the Fourth Amendment rights at issue were clearly established and well defined, and any reasonable officer in Gregg's position would have known that her conduct was objectively unreasonable in light of such Fourth Amendment standards. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005).

The record so interpreted also supports liability against Gregg for the state law torts of assault and battery and malicious prosecution.

Finally, the record so interpreted supports that the City of Cadillac had a *de facto* policy of authorizing Gregg's illegal conduct through absence of supervision and then ratified her illegal conduct in this case by failing to receive a criminal complaint for referral to the Michigan State Police. *See Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); *Swans v. City of Lansing*, 65 F. Supp. 2d 625 (W.D. Mich. 1998).

Accordingly, an Order shall enter denying Defendants City of Cadillac and Karen Gregg's Motion for Summary Judgment.

Dated in Kalamazoo, MI:                      /s/Richard Alan Enslen
March 19, 2007                               Richard Alan Enslen
                                             Senior United States District Judge